UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARY JANE MCGAIR and
JOSEPH MCGAIR

     Plaintiffs,

   v.                                                           C.A. No. 11-038-ML

AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA

     Defendant.

## MEMORANDUM AND ORDER

Plaintiffs, Mary McGair and Joseph McGair (collectively "the McGairs"), filed this action

seeking a declaratory judgment as to the rights and obligations of the parties under a flood insurance

policy issued by American Bankers Insurance Company of Florida ("American Bankers"). The

McGairs also assert claims for breach of contract and bad faith.[1]  Both parties have now moved for

summary judgment. For the reasons set forth below, American Bankers' motion is granted and the

McGairs' motion is denied.

---

[1] Plaintiffs allege that "there exists a contractual relationship between the Plaintiffs and
Defendant that gives rise to contractual rights and obligations." Pl.'s Compl. ¶ 31. Plaintiffs further
allege that Defendant had a legal duty to act in good faith and that "Defendant breached this duty by its
conduct in processing and rejecting Plaintiff's claim." Pl.'s Compl. ¶ 35. Since these claims hinge upon
Plaintiffs' rights under their insurance policy, the Court's analysis and ruling as to Plaintiffs' claim for
declaratory relief will address and resolve these additional claims.

## I. Facts

Portions of the McGairs' home, located in Warwick, Rhode Island, were damaged by flooding in March 2010. The flooding also caused damage to some of the contents located in the McGairs' basement. At that time, the McGairs' home was covered by a flood insurance policy issued by American Bankers. The central issue in the McGairs' declaratory judgment action is the scope and extent of that flood insurance coverage.

On March 31, 2010, the McGairs made a claim to American Bankers for losses caused by the flooding. The McGairs' May 17, 2010, correspondence with American Bankers claimed a loss in the amount of $40,614.52. On June 11, 2010, American Bankers rejected the McGairs' claim for flood damage on the basis that the insurance policy only provided limited coverage for damage to the contents of their basement. American Bankers subsequently issued the McGairs a check in the amount of $4,404.35. The McGairs declined to accept that amount and instead pursued further correspondence with American Bankers. Dissatisfied with that process, the McGairs brought the instant action against American Bankers. The McGairs contend that, under their policy, the contents of their basement are insured up to $100,000, without limitation.

The McGairs' flood insurance policy is part of a broad national program of insurance established by Congress, the National Flood Insurance Program ("NFIP"). 42 U.S.C. § 4001 (2006). A portion of the McGairs' policy is labeled as a Standard Flood Insurance Policy ("SFIP"). In some cases, SFIPs are issued by the Federal Emergency Management Agency ("FEMA"). See 44 C.F.R. Pt. 61, App. A(1), Art. I (2009). An SFIP may also be issued, however, by private "Write-Your-Own" ("WYO") insurance companies such as American Bankers. See id. § 61.13(f). Except in

2

circumstances involving the express written consent of the Federal Insurance Administrator, "[t]he

Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance

Program." Id. § 61.13(d). Accordingly, the McGairs' policy includes the same terms and limitations

as the SFIP, and basement coverage is specifically "limited" to:

> Any of the following items, if installed in their functioning locations and, if
> necessary for operation, connected to a power source:
>
> (1)   Central air conditioners;
> (2)   Cisterns and the water in them;
> (3)   Drywall for walls and ceilings in a basement and the cost of labor to nail
>        it, unfinished and unfloated and not taped, to the framing;
> (4)   Electrical junction and circuit breaker boxes;
> (5)   Electrical outlets and switches;
> (6)   Elevators, dumbwaiters, and related equipment, except for related
>        equipment installed below the base flood elevation after September 30,
>        1987;
> (7)   Fuel tanks and the fuel in them;
> (8)   Furnaces and hot water heaters;
> (9)   Heat pumps;
> (10)  Nonflammable insulation in a basement;
> (11)  Pumps and tanks used in solar energy systems;
> (12)  Stairways and staircases attached to the building, not separated from it by
>        elevated walkways;
> (13)  Sump pumps;
> (14)  Water softeners and the chemicals in them, water filters, and faucets
>        installed as an integral part of the plumbing system;
> (15)  Well water tanks and pumps;
> (16)  Required utility connections for any item in this list; and
> (17)  Footings, foundations, posts, pilings, piers, or other foundation walls and
>        anchorage systems required to support a building.

Pl.'s SFIP, Art. III(A)(8), Docket No. 17-1; see also 44 C.F.R. Pt. 61, App. (A)(1), Art. (III)(A)(8). A

second provision in both the McGairs' policy and the SFIP lists additional covered items, limiting

coverage of personal property in a basement to the following items:

> [I]f installed in their functioning locations and, if necessary for operation,

3

connected to a power source:

    a.   Air conditioning units, portable or window type;
    b.   Clothes washers and dryers; and
    c.   Food freezers, other than walk in, and food in any freezer.

Pl.'s SFIP, Art. III(B)(3); see also 44 C.F.R. Pt. 61, App. (A)(1), Art. (III)(B)(3).

The McGairs' claimed loss of $40,614.52 includes damage to items in their basement such as "furniture, furnishings, appliances and fixtures." Pl.'s Compl. ¶ 7. Their claim for damages includes, among other things, carpet replacement for an estimated cost of $13,272.70. See Ahlborg Cost Proposal, May 7, 2010, Docket No. 17-3. Neither the express terms of the SFIP nor the McGairs' policy, however, include carpet replacement among the list of contents covered in basement areas. Nevertheless, the McGairs allege that the Declarations Page of their policy expands the scope of their flood insurance coverage.

The McGairs' policy includes an attached Declarations Page. Both the McGairs' policy and the SFIP define the Declarations Page as:

> A computer-generated summary of information you provided in the application for insurance. The Declarations Page also describes the term of the policy, limits of coverage, and displays the premium and our name. The Declarations Page is part of this flood insurance policy.

Pl.'s SFIP, Art. II(10); see also 44 C.F.R. Pt. 61, App. (A)(1), Art. (II)(10). The McGairs' Declarations Page labels the policy as a Preferred Risk Policy ("PRP") and states that the building is insured up to $250,000 and that the contents of the building are insured up to $100,000. Additionally, the Declarations Page indicates that it covers the contents of the "basement and above." Flood Policy Declarations, Docket No. 14-2. The Declarations Page says nothing about exclusions or limitations with regard to that coverage.

4

American Bankers has moved for summary judgment, arguing that the McGairs' claims fail as a matter of law because flood insurance coverage through the NFIP is governed by federal law and is strictly construed according to the express terms of the policy. American Bankers argues that the Declarations Page does nothing to alter the terms of the McGairs' policy. The McGairs also argue for summary judgment, claiming that the discrepancy between the coverage limitations in the body of their policy and the unqualified statement of coverage on the Declarations Page creates an ambiguity that should be construed in their favor. The McGairs also argue that their policy, as a PRP, differs from an SFIP in that the limiting terms of an SFIP do not apply.

## II. Standard

Upon a motion, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court draws "all factual inferences in favor of the non-moving party." D&H Therapy Assoc., LLC v. Boston Mut. Life Ins. Co., 640 F.3d 27, 34 (1st Cir. 2011). The standard is the same on cross-motions for summary judgment and the Court will "consider each motion separately, drawing all inferences in favor of each non-moving party in turn." Id.

## III. Analysis

### A. Defendant's Motion for Summary Judgment

The facts of this case are undisputed by the parties. "[W]here the facts upon which liability is claimed or denied under an insurance policy are undisputed and the existence or amount of liability

depends solely upon a construction of the policy, the question presented is one of law for the court to decide." Atlas Pallet, Inc. v. Gallagher, 725 F.2d 131, 134 (1st Cir. 1984). American Bankers argues for summary judgment on the basis that the McGairs' policy expressly limits the available coverage for damage to the contents of the basement and that the statutory framework surrounding the NFIP requires that those limiting terms be strictly construed. The McGairs object to American Bankers' motion, arguing that ambiguities in their insurance contract require that the contents of their basement be "covered without limitations." Pl.'s Compl. ¶ 28.

### i. Framework for Construing the Terms of the McGairs' Policy

The NFIP is not a typical insurance program. The NFIP is created by federal law, in part, to provide "as a matter of national policy, a reasonable method of sharing the risk of flood losses . . . through a program of flood insurance." 42 U.S.C. § 4001(a). This program involves both the private insurance industry and "large-scale participation of the Federal Government." Id. § 4001(b). The regulations governing the administration of the NFIP provide that "the Federal Insurance Administrator may enter into arrangements with individual private sector property insurance companies . . . [whereby] such companies . . . may offer flood insurance coverage under the program." 44 C.F.R. § 62.23(a). Pursuant to those guidelines, American Bankers is a private insurer issuing flood insurance policies under the NFIP.

The NFIP establishes a national program of flood insurance and that program is carried out by drawing upon the United States Treasury to pay out claims. See 42 U.S.C. § 4017(a). Loss payments on policies issued under the NFIP come out of the Federal Treasury. See 44 C.F.R. Pt. 62, App. A, Art. III(D) (describing loss payments by private insurers as being paid out of accounts using federal

6

funds); see also Tucard, LLC v. Fidelity Nat. Property & Cas. Ins. Co., 567 F.Supp.2d 215, 218

(D.Mass. 2008). "Protection of the public fisc requires that those who seek public funds act with

scrupulous regard for the requirements of the law . . . ." Heckler v. Cmty. Health Serv. of Crawford

Cnty. Inc., 467 U.S. 51, 63 (1984).

A court must take particular care when Congress has prescribed the manner in which a

national insurance program may draw upon public funds.[2] See Fed. Crop Ins. Corp. v. Merrill, 332

U.S. 380, 385 (1947) (stating that it is the "duty of all courts to observe the conditions defined by

Congress for charging the public treasury"). Participants in such a program of insurance are charged

with knowing the law and the attendant regulations. See id. at 384-85.

The McGairs' flood insurance policy mirrors the terms of the SFIP. Policies issued by private

insurance companies, such as American Bankers, simply substitute their own name in place of FEMA

when issuing an SFIP. See 44 C.F.R. § 61.13(f). "The Standard Flood Insurance Policy and required

endorsements must be used in the Flood Insurance Program . . . ." Id. § 61.13(d). Those terms may

not be "altered, varied, or waived other than by the express written consent of the Federal Insurance

Administrator." Id. As a result, the coverage limitations in section III(A)(8) and section III(B)(3) of

the SFIP are contained, verbatim, in the McGairs' policy. See Pl.'s SFIP, Art. III(A)(8), (B)(3).

These terms expressly limit coverage to certain specified contents located in a basement. Under the

NFIP, the McGairs are charged both with knowing the terms of their insurance policy and the manner

in which any changes to those terms could be made.

---

[2] Pursuant to the NFIP, the National Flood Insurance Fund was established in order "[t]o carry
out the flood insurance program authorized by this chapter." 42 U.S.C. § 4017(a). Congress further
established that the payment of claims would be made according to methods prescribed in the regulations
issued by the Director. See id. § 4019.

American Bankers argues that the NFIP requires that the terms of the SFIP be narrowly construed, limiting basement flood coverage according to the SFIP's express terms. See 44 C.F.R. Pt. 61, App. A(1), Art. III(A)(8), (B)(3) (limiting flood insurance coverage for items in a basement to those in the enumerated lists). Given the nature of the federal insurance program and the statutory framework, the Court must strictly construe and enforce the terms of the McGairs' flood insurance policy. See Gowland v. Aetna, 143 F.3d 951, 954 (5th Cir. 1998) (strictly construing and enforcing the NFIP and its attendant regulations) (citing Fed. Crop. Ins., 332 U.S. 380). Those terms expressly limit the available coverage for damage to the contents of the McGairs' basement.

There is no ambiguity in the portion of the McGairs' policy labeled as "Dwelling Form: Standard Flood Insurance Policy." Pl.'s SFIP 1. Under the terms of their policy, the McGairs cannot recover for the contents of their basement that were not expressly listed in the policy. The McGairs, however, rely upon their policy's Declarations Page in support of their argument that their policy provides coverage for the contents of their basement up to $100,000, without limitation. The McGairs' Declarations Page labels their policy as a Preferred Risk Policy ("PRP"), and they argue that, given that designation, their policy is not subject to the limiting terms contained either in their policy or the SFIP. In addition, the McGairs argue that the coverage representations (i.e. coverage of the "basement and above") on their Declarations Page are in conflict with the limiting terms in the body of their policy, thereby creating an ambiguity that should be construed in their favor.

ii. Preferred Risk Policies

The McGairs argue that their policy, as a PRP, should be construed according to traditional common law principles. Essentially, the McGairs argue that because their policy is a PRP, as

8

opposed to an SFIP, it should be considered as a typical insurance contract. According to that view, the alleged ambiguity between the Declarations Page and the body of their policy should be construed in their favor and against American Bankers, the insurer. Such a construction would potentially allow for the recovery of losses beyond those which are expressly covered in the terms in the body of the McGairs' flood insurance policy.

The McGairs argue that PRPs are not ordinary flood insurance policies issued under the national program. At oral argument, held on August 15, 2011, counsel for the McGairs argued that the regulations governing the NFIP apply only to SFIPs and not to PRPs. As such, it was counsel's view that the terms of the SFIP, and thereby its exclusions, would not apply to the McGairs' policy. For support, counsel argued that differences between the 2011 edition of FEMA's NFIP Flood Insurance Manual ("Flood Manual") and earlier editions of the Flood Manual demonstrate that, at the time of the McGairs' flood damage, PRPs were wholly distinct from SFIPs.[3] In addition, in their objection to American Bankers' motion for summary judgment, the McGairs suggest that a PRP differs from an SFIP in that a PRP "is not conditioned on the reimbursement agreement between the

---

[3] In their reply memo in support of their motion for summary judgment, American Bankers quoted language from a 2011 edition of the FEMA Flood Manual, see Def.'s Reply Memo 3, Docket No. 29, and American Bankers attached that version of the Flood Manual as an exhibit. See Flood Manual, effective May 1, 2011, Docket No. 30-1. At oral argument, counsel for the McGairs pointed out that the language in the 2011 Flood Manual, defining PRPs, differs from earlier versions of the Flood Manual. The parties were asked to supplement their filings by providing an earlier edition of the manual. In a joint supplemental filing, the parties provided the Court with an edition of the Flood Manual made effective May 1, 2006, and an edition of the manual made effective October 1, 2010. Joint Supp. Ex., Docket No. 32. The Court notes, however, that neither manual was effective on the date of the McGairs' flood damage, occurring in March 2010. The Court takes judicial notice of the edition of the Flood Manual encompassing the date of the flood damage, made effective October 1, 2009, and notes that the applicable version of the manual uses the same language as the other pre-2011 versions, describing PRPs as "low-cost coverage." Flood Manual PRP 1, effective October 1, 2009, available at http://www.fema.gov/business/nfip/manual200910.shtm; see generally Fed. R. Evid. 201; Gent. v. CUNA Mut. Ins. Soc'y, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of information provided on a government website).

Defendant and the Federal Government." Pl.'s Obj. 4, Docket No. 27. Nothing in the record supports these contentions.

Neither the NFIP nor the SFIP mention or discuss PRPs. FEMA's Flood Manual, however, helps explain the nature of PRPs. The 2006, 2009, and 2010 editions of the Flood Manual state that the "Preferred Risk Policy (PRP) offers low-cost coverage to owners and tenants of eligible buildings." E.g., Flood Manual PRP 1, effective October 1, 2009, available at http://www.fema.gov/business/nfip/manual200910.shtm. The pre-2011 versions of the Flood Manual outline a homeowner's eligibility for a PRP rate but do not directly state how a PRP relates to an SFIP. In contrast, the 2011 edition of the manual more clearly identifies the overlap between PRPs and SFIPs, stating that the "Preferred Risk Policy (PRP) is a lower-cost Standard Flood Insurance Policy (SFIP)." Flood Manual PRP 1, effective May 1, 2011, Docket No. 30-1. The 2011 Flood Manual also addresses PRP coverage limitations, stating that "basement coverage limitations do apply." Id. at PRP 2. The McGairs take hold of these discrepancies and argue that in 2011 PRPs took on a different character and, for the first time, became subject to the terms of the SFIP. The Court does not subscribe to this view.

A PRP's lower premium rate does not expand or contract the coverage provided for under the SFIP, which includes the terms that the NFIP regulations require to be used in the issuance of flood insurance policies. See 44. C.F.R. § 61.13(d). The 2011 changes to the Flood Manual help clarify PRP eligibility and the nature of such coverage but the Flood Manual itself does eclipse the regulations governing flood insurance policies issued under the NFIP. Agency manuals do not carry the force of law. See River Street Donuts, LLC v. Napolitano, 558 F.3d 111, 116 (1st Cir. 2009) (citing Christensen v. Harris County, 529 U.S. 576, 587 (2000)). At all times, the McGairs' flood

10

insurance was provided in accordance with the regulations promulgated under the NFIP. The pre-2011 versions of the Flood Manual identified the manner in which the McGairs qualified for a lower premium rate for their flood insurance coverage but that lower premium did not alter the requirement that, except by "express written consent of the Federal Insurance Administrator," the "[SFIP] must be used in the Flood Insurance Program." 44 C.F.R. § 61.13(d).

The McGairs were responsible for knowing the scope of their insurance coverage. Participants in federal programs drawing upon public funds have a duty to familiarize themselves with the legal requirements of that program. See Heckler 467 U.S. at 64. In this case, American Bankers issued the policy as a WYO and, in doing so, acted as a "fiscal agent" of the United States. 44 C.F.R. § 62.23(g). In this "fiduciary relationship," American Bankers is responsible for "assur[ing] that any *taxpayer funds* are accounted for and appropriately expended." Id. § 62.23(f) (emphasis added). Regardless of whether a policy is an SFIP or a PRP, public funds are dispersed in accordance with the NFIP and, under the regulations governing the NFIP, basement coverage is very clearly circumscribed, irrespective of the premium rate.

The McGairs' policy states that it "cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator." Pl.'s SFIP, Art. VII(D). This is exactly the same prohibition against waivers that is contained in the SFIP. 44 C.F.R. Pt. 61, App. A(1), Art. VII(D). In addition, the regulations state that "no provision of the [SFIP] . . . shall be altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator." Id. § 61.13(d). The regulations mandate that, unless changed in the appropriate manner, "[t]he Standard Flood Insurance Policy . . . must be used." Id. American Bankers was not at liberty to freely amend the available coverage and, even if it had improperly given the impression of a

11

change in coverage, "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." Heckler, 467 U.S. at 63. Under the NFIP, the McGairs were on notice of the regulations governing the administration of their flood insurance, and they cannot now claim ignorance of the manner in which changes to their policy could be made.

There is no ambiguity surrounding the fact that the NFIP encompasses the McGairs' policy. The McGairs' policy states, in describing the agreement, that "[t]he Company provides flood insurance under the terms of the National Flood Insurance Act of 1968 and its amendments." Pl.'s SFIP, Art. I. The fact that the McGairs' policy was denominated a PRP only provides them with an advantageous premium rate. That designation does not change the way in which funds are drawn from the public treasury, the fact that the McGairs are charged with knowing the terms of the SFIP, or the manner in which the McGairs are charged with knowing how changes to the SFIP could be made. As such, the Court will review the McGairs' policy in the same manner that it would review an SFIP. The terms of the McGairs' policy are therefore strictly construed to limit coverage to those items in the basement that are expressly covered.

### iii. The Declarations Page

The McGairs argue that their Declarations Page extends their coverage to include the contents of their home in the "basement and above," without limitation. The McGairs' argument essentially derives from a First Circuit decision, Wagenmaker v. Amica Mutual Insurance Co., 369 Fed.Appx. 149 (1st Cir. 2010). In that case, involving an automobile insurance policy, the amended declarations page stated that damage caused by uninsured motorists was not covered under the insurance policy.

12

At the same time, the body of the policy contained "boilerplate" terms that entitled the policyholder to collect for damages caused by uninsured drivers. The Court held that the terms of the policy "include those listed on the declarations page." Id. at 150. The Court found that the declarations page "unambiguously states that there is no uninsured motorist coverage." Id. at 151. Looking to that decision for support, the McGairs argue that the "Declaration[s] Page trumps the boilerplate language of a policy in resolving ambiguities in coverage." Pl.'s Obj. 5.

The McGairs essentially argue that their Declarations Page creates an ambiguity that should be construed in their favor. Unlike the auto insurance at issue in Wagenmaker, however, the McGairs' flood insurance is a different animal altogether. Wagenmaker involved the application of Rhode Island state law contract principles. In this case, the NFIP is part of a national insurance program established by Congress. Such a program imposes upon the Court a "duty . . . to observe the conditions defined by Congress for charging the public treasury." Fed. Crop Ins., 332 U.S. at 385. Accordingly, the McGairs' appeal to the principles of the common law will only go so far.

"[F]ederal law controls disputes over the coverage of insurance policies issued pursuant to the National Flood Insurance Program." Atlas Pallet, 725 F.2d at 135. The Act, however, does not completely stanch all reliance upon principles of insurance law. See id. "[A]lthough neither the statutory nor decisional law of any particular state is applicable to the case at bar, we are free to apply the traditional common law technique of decision by drawing upon standard insurance principles." Id. (determining whether a structure qualified for coverage as an "addition or extension"). Basic contract principles also govern the interpretation of the policy. See id. Nevertheless, an appeal to these principles must be viewed in light of the express language of the policy as well as the governing statute and applicable regulations. See Carneiro Da Cunha v. Standard Fire Ins. Co., 129 F.3d 581,

13

585 (11th Cir. 1997).

The reference on the McGairs' Declarations Page to coverage in the "basement and above" does not alter the express terms of the policy. Although it is well-settled that "insurance contracts are construed liberally in the insured's interest and strictly against the insurer," an insured party, such as the McGairs, will not recover when coverage under the SFIP clearly does not encompass the damaged property. See Atlas Pallet, 752 F.2d at 136. The SFIP expressly limits the available coverage for the contents of a basement to a narrow list of specific items. The McGairs' policy, as is required of policies issued under the NFIP, incorporates those same terms and limitations.

The McGairs' Declarations Page provides only summary information. The policy defines the Declarations Page as:

> A computer-generated summary of information you provided in the application for insurance. The Declarations Page also describes the term of the policy, limits of coverage, and displays the premium and our name. The Declarations Page is part of this flood insurance policy.

Pl.'s SFIP, Art. II(B)(10).[4] Additionally, the reverse side of the McGairs' Declarations Page states that the "Declarations Page indicates the coverage you purchased, your policy limits, and the amount of your deductible." Decl. Page, Docket 18-2. The summary information on the Declarations Page contains general rating data that does not alter the terms of the policy itself. See Carneiro Da Cunha, 129 F.3d at 585-86 (finding that information on the Declarations Page could not be construed as a promise of full coverage in light of the policy terms providing limited coverage); Oaks v. Allstate Ins. Co., 2006 WL 3328179, at * 7 (E.D. Ky. Nov. 14, 2006) (finding the initial home rating to be insignificant because Article I of the SFIP reserves for the insurer the right to review and revise the

---

[4] The McGairs contend that American Bankers filled out the information on the Declarations Page but that point has no bearing on the analysis.

14

information); Goldman v. Witt, 1994 WL 905577, at * 4 (D.N.J. Dec. 7, 1994) (finding that the Declarations Page is of little import and "does not amend or reflect the coverage FEMA has contracted to provide"). The McGairs' Declarations Page indicates that the contents of their basement are covered up to $100,000. The express terms of their policy, however, limit that coverage to an enumerated list of covered items. The Declarations Page does not stand in isolation and it does not augment the express terms of the McGairs' policy, which limit basement coverage to a specific list of covered contents.

Within the context of the NFIP, as stated previously, the McGairs had a duty to familiarize themselves with the terms of the insurance program, see Heckler, 467 U.S. at 64, and the McGairs were on notice of the fact that American Bankers could not alter the terms of the SFIP without express written consent from the Federal Insurance Administrator. See 44 C.F.R. § 61.13(d). Accordingly, the rating information on the Declarations Page cannot be construed to provide basement coverage without limitation when the policy itself expressly limits such coverage. Unlike Wagenmaker, the insurance program at issue draws upon the Treasury and is administered in accordance with the statutory directives of Congress and the attendant regulations. "As such, strict adherence is required to all terms of the SFIP." Tucard, 567 F.Supp.2d at 221 (quoting Forman v. FEMA, 138 F.3d 543, 545 (5th Cir. 1998)). Therefore, the terms of the McGairs' policy are strictly construed according to the language of their policy and the SFIP, restricting loss payments to those items in the basement that were expressly listed.

## B. Plaintiffs' Motion for Summary Judgment

The McGairs' motion for summary judgment rehashes the same arguments set forth in their

objection to American Bankers' motion for summary judgment. That is, the McGairs argue that
summary judgment is warranted because the Declarations Page attached to their flood insurance
policy creates an ambiguity by covering the contents of the "basement and above" while the
"boilerplate" language of the policy itself limits coverage to only specific enumerated items.
According to the McGairs, this ambiguity should be construed in their favor. In addition, the
McGairs repeat their argument that their policy, as a PRP, is not subject to the limiting terms of the
SFIP that restrict basement coverage to a specific list of contents.

The McGairs' Declarations Page argument fails for the reasons stated previously. Simply,
there is no ambiguity in the insurance policy because, although the NFIP does not "abrogate standard
insurance law principles[,] . . . neither the statutory nor decisional law of any particular state is
applicable." Atlas Pallet, 725 F.2d at 135. Federal law controls the dispute, see id., and federal
precedents require that participants in federal programs drawing upon the Treasury familiarize
themselves with the contours of that program. See Heckler, 467 U.S. at 64. Here, the "boilerplate"
language at issue is in fact required regulatory language that unambiguously limits coverage for the
contents of a basement to a specific list of items, and the McGairs are charged with knowing the
scope of that coverage.

The McGairs' PRP argument fares no better on their motion for summary judgment. There is
nothing to suggest that a PRP differs at all from an SFIP with regard to the terms of flood insurance
coverage. A PRP is merely "low-cost coverage" available in certain moderate-risk zones. See Flood
Manual PRP 1, effective October 1, 2009, available at
http://www.fema.gov/business/nfip/manual200910.shtm. The McGairs' policy remained, at all
times, subject to "the terms of the National Flood Insurance Act of 1968," Pl.'s SFIP, Art. I, and to

16

read into their reduced premium rate an ambiguity that would upend the regulatory terms of the SFIP

would be contrary to the requirement that a party must "be held to the most demanding standards in .

. . [their] quest for public funds." Heckler, 467 U.S. at 63.

## IV. Conclusion

For the reasons set forth above, American Bankers' motion for summary judgment is

GRANTED as to all claims and the McGairs' motion for summary judgment is DENIED.   The clerk

is directed to enter judgment in favor of Defendant on all counts.

SO ORDERED

/s/ Mary M. Lisi

Mary M. Lisi
Chief United States District Judge
September 7, 2011